IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

SETH M., *Appellant*,

*v.*

ARIENNE M., J.M., E.M., *Appellee*s.

No. 1 CA-JV 18-0007
FILED 9-6-2018

Appeal from the Superior Court in Navajo County
No. S0900SV201700016
The Honorable Michala M. Ruechel, Judge

**AFFIRMED**

COUNSEL

Bearnson & Caldwell, LLC, Cave Creek
By Wayne K. Caldwell
*Counsel for Appellant*

Riggs, Ellsworth & Porter, PLC, Show Low
By Michael R. Ellsworth, Joshua G. Crandell
*Counsel for Appellees*

---

**OPINION**

Judge Jennifer M. Perkins delivered the opinion of the Court, in which Presiding Judge Randall M. Howe and Judge Peter B. Swann joined.

---

**P E R K I N S**, Judge:

¶1        Seth M. ("Father") appeals the termination of his parental rights to the two minor children ("the Children") he has in common with Arienne M. ("Mother"). The juvenile court terminated Father's parental rights to the Children after Mother filed a petition for termination under Arizona Revised Statutes ("A.R.S.") section 8-533(B)(2) and (B)(4) (2018). Father's admitted sexual abuse of his stepdaughter constitutes willful abuse of a child under § 8-533(B)(2), a statutory ground supporting termination of Father's parental rights to the Children. Further, the removal of detriments to the Children, including instability and safety concerns, supports a finding that termination is in the Children's best interests. We thus affirm the juvenile court's termination ruling.

## FACTUAL AND PROCEDURAL HISTORY

¶2        Father and Mother married in 2012 and lived in Utah. Mother's four children from a prior marriage lived with them. The parties had the Children involved in this severance action after they were married.

¶3        In January 2016, Father twice climbed into the bed of his twelve-year-old stepdaughter ("Stepdaughter") and rubbed her breasts when he thought she was asleep. Father confessed to abusing Stepdaughter in June 2016, after initially denying it. Soon after, Mother moved with all of her children to Snowflake, Arizona. Father has not seen the Children since that time and has had no contact with the Children since January 2017.

¶4        In February 2017, a Utah court convicted Father of sexual abuse of a child, a class 2 felony. Later that year, Mother filed for divorce and filed a petition to terminate Father's rights to the Children. Father then was released from jail on probation, which prohibited him from having contact with any person under the age of eighteen, but this restriction could be lifted at the discretion of Father's probation officer. At the time of termination, Father's probation officer had not approved contact with any minors.

¶5        The juvenile court terminated Father's rights on two grounds: first, "Father has neglected or willfully abused a child and this abuse has caused serious emotional injury to the child"; second, "Father has been deprived of civil liberties due to the conviction of a felony which is of such nature as to prove the unfitness of Father to have future custody and control of the [C]hildren." It also found that termination was in the Children's best interests because termination would remove the detriments of instability and safety concerns, and a stepparent adoption would be available to the Children in the foreseeable future, which provides the Children a benefit.

¶6        On appeal, Father challenges the statutory grounds for termination. He argues that because Mother did not sufficiently prove emotional harm, there was insufficient evidence to support a finding of abuse and that the crime for which he was convicted is not a type that proves parental unfitness. He also argues that the juvenile court erred in terminating his parental rights because the Children are not immediately adoptable.

**DISCUSSION**

¶7        The issue before us is whether Father's admitted sexual abuse of Stepdaughter supports a statutory ground for termination based on the plain language of § 8-533(B)(2). "[W]e review de novo legal issues requiring the interpretation and application of A.R.S. § 8-533." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 9 (App. 2004). We will accept the juvenile court's factual findings supporting the severance unless they are clearly erroneous. *James S. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 351, 354, ¶ 10 (App. 1998).

¶8        A court may terminate parental rights if it finds by clear and convincing evidence "[t]hat the parent has neglected or wilfully abused a child. This abuse includes serious physical or emotional injury . . . ." A.R.S. § 8-533(B)(2); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶ 12 (2000).  It is a matter of first impression whether a court can terminate parental rights under § 8-533(B)(2) when the parent has abused a child with whom the parent has no familial relationship. "Our task in statutory construction is to effectuate the text if it is clear and unambiguous." *BSI Holdings, LLC v. Ariz. Dep't of Transp.*, 244 Ariz. 17, 19, ¶ 9 (2018). We hold that Stepdaughter, twelve years old at the time of the offense, is "a child" within the unambiguous, plain terms of § 8-533(B)(2), which is sufficient to support termination of Father's rights to Children.

¶9 In holding the term "a child" unambiguous, we depart from a prior opinion of this Court. *See Linda V. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 76, 78, ¶ 10 (App. 2005) ("We first note that the phrase 'a child' contained in § 8-533(B)(2) is ambiguous because it is readily capable of vastly different interpretations."). The *Linda V.* court deemed the phrase "a child" ambiguous because the same phrase appears elsewhere in the termination statute where the context requires that the provisions apply to *the* child at issue, not just any child. *Id.* at 78–79, ¶¶ 11–13. In other words, elsewhere in the statute, the plain language limits "a child" to a specific child. The context of the section at issue here does not require such a limited reading of the phrase "a child." Our disagreement with *Linda V.* is confined to its determination of ambiguity and does not extend to its holding. *Id.* at 79, ¶ 14 ("[P]arents who abuse or neglect their children, or who permit another person to abuse or neglect their children, can have their parental rights to their other children terminated even though there is no evidence that the other children were abused or neglected.").

¶10 The juvenile court found that Father sexually abused Stepdaughter and was convicted of that offense. Section 13-1404 explicitly describes the conduct to which Father admitted, and that criminal provision is incorporated into the definition of abuse found in A.R.S. § 8-201(2)(a). *See* A.R.S. 13-1404(A) ("A person commits sexual abuse by intentionally or knowingly engaging in sexual contact . . . with any person who is under fifteen years of age if the sexual contact involves only the female breast."). Therefore, the juvenile court's findings support its determination that Father willfully abused a child.

¶11 We have previously required an additional showing when "the grounds for termination of a parent's rights to one child are based on abuse of another child." *Tina T. v. Dep't of Child Safety*, 236 Ariz. 295, 299, ¶ 17 (App. 2014). Specifically, we have asked the party seeking termination of rights to "show a constitutional nexus between the prior abuse and the risk of future abuse to the child at issue." *Id.* This "constitutional nexus" requirement first appeared in a footnote in the *Linda V.* opinion, although that opinion does not identify any legal source for such a requirement and it is not present in the statute itself. *Linda V.*, 211 Ariz. at 80 n.3, ¶ 17. We need not pass on the validity of such a requirement today because the juvenile court record supports a finding of sufficient nexus. Father testified at trial that: he is addicted to pornography and engaged in voyeurism; Stepdaughter was not the first person that he had unlawfully or inappropriately touched; and he has a problem with telling the truth and initially lied about this sexual abuse to the officer. Further, one of the

Children was in the same room as Stepdaughter during both instances of sexual abuse, and both Children were in the home during the sexual abuse.

¶12 Father's argument that Mother failed to properly demonstrate serious emotional injury is correct, but ultimately unavailing. "Serious emotional injury" must be "diagnosed by a medical doctor or psychologist." A.R.S. § 8-201(32). Mother presented no evidence that a medical doctor or psychologist had diagnosed Stepdaughter with such an injury. The only evidence for Stepdaughter's emotional injury came from the testimony of Mother, Father, and two family acquaintances who observed her. Therefore, the evidence could not support the juvenile court's finding that Father had inflicted serious emotional injury. *See E.R. v. Dep't of Child Safety*, 237 Ariz. 56, 59, ¶ 12 (App. 2015) ("[T]he diagnosis of a medical doctor or psychologist is required to establish serious physical or emotional injury."). However, a determination of serious emotional injury was not necessary to the juvenile court's finding of abuse. The term "abuse" as used in A.R.S. § 8-533(B)(2) and defined in § 8-201(2) does not require a showing of serious emotional injury or a diagnosis of a medical doctor or psychologist. *Id.* at 59, ¶ 15. Thus, though the juvenile court erred in finding that Father had inflicted serious emotional injury on Stepdaughter, this error does not negate the court's findings of abuse.

¶13 We hold that the juvenile court's findings of abuse support a ground for termination and we need not, therefore, consider the other ground the court cited in terminating Father's rights. *See Michael J.*, 196 Ariz. at 251, ¶ 27 ("Because we affirm the trial court's order granting severance on the basis of abandonment, we need not consider whether the trial court's findings justified severance on the other grounds announced by the court.").

¶14 Father also argues that because Mother and Father were still married at the time of termination, the Children were not immediately adoptable, and the juvenile court therefore erred in finding termination would be in the Children's best interests. The best interests analysis requires the court to consider whether termination would result in an affirmative benefit to the child or would eliminate a detriment caused by the continuation of the parental relationship. *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98, ¶ 8 (App. 2016). Making the child available for a prospective adoption is a benefit that can support a best interests finding. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 16 (2016). In addition to the benefit of the potential adoptability of the Children following termination, the juvenile court relied on the removal of detriments—instability and safety concerns posed by Father's admitted sexual abuse history—in

reaching its best interests determination. Thus, the juvenile court's finding that termination was in the Children's best interests was not clearly erroneous.

## CONCLUSION

¶15 We affirm the termination of Father's parental rights to the Children.



AMY M. WOOD • Clerk of the Court
FILED:  AA